## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MASON ANTHONY WRIGHT,      :      **CIVIL NO. 4:10-CV-787**
                                  :

       **Plaintiff,**         :      **(Judge McClure)**
                                    :

       **v.**                  :
                                    :      **(Magistrate Judge Carlson)**

**DEPARTMENT OF CORRECTIONS,**  :
**et al.,**                            :
                                  :

       **Defendants.**      :

## REPORT AND RECOMMENDATION

### I.    Introduction

This prisoner civil rights lawsuit, which comes before the Court on two defense motions for summary judgment, calls upon us to address the parameters of the Eighth Amendment's prohibition against the imposition of cruel and unusual punishment in a prison medical setting.  We are also asked to examine this issue in a setting where the inmate-plaintiff, who has brought this action, repeatedly fails to abide by litigation deadlines set by this court.

For the reasons set forth below, it is recommended that these motions for summary judgment be granted, and that this case be dismissed in its entirety.

### II.    Statement of Facts and of the Case.

This is a *pro se* civil rights action brought by Mason Anthony Wright, a state inmate who is currently confined at the State Correctional Institution (SCI)

Huntingdon. Wright commenced this action on January 11, 2010, by filing a complaint in the Court of Common Pleas, a complaint which was subsequently removed by the defendants to federal court. (Doc. 1.)

Wright's initial *pro se* complaint was a detailed document, which described at length in more than 180 separately numbered paragraphs the conduct spanning two decades which he alleged violated his constitutional rights. (Doc. 2.) Liberally construed, in his complaint Wright alleged, in broad terms, that prison officials violated his Eighth Amendment right to be free from cruel and unusual punishment by displaying deliberate indifference to his serious medical needs. (Id.) More specifically, according to his complaint, in 1993 Wright was issued an electric razor to use while shaving due to facial dermatitis. (Id. ¶ 16.) Following the issuance of this electric razor, sometime "before the turn of the Twenty first Century," in the late 1990's, the former warden at SCI-Huntingdon implemented a policy forbidding inmates generally from purchasing new electric razors. (Id. ¶ 19.) As a result, when Wright's electric razor broke in 2002, he was unable to purchase a new electric razor, and turned to disposable razor blades for shaving. (Id. ¶¶ 20-36.) Wright found these disposable razor blades unsatisfactory and began experiencing problems with ingrown facial hairs and dermatitis. (Id.)

Over the next two years, from 2002 through 2004, Wright was seen and treated for ingrown facial hairs on a number of occasions, and was directed to use hot compresses to treat these ingrown hairs. (Id. ¶¶ 37-48.) By December, 2004, Wright was receiving other treatment for these ingrown facial hairs, including antibiotic creams. (Id. ¶50.) Wright's complaint recites that medical staff continued an on-going course of medical treatment for these episodes of dermatitis between 2005 and 2007. (Id. ¶¶ 58-109.) During this two-year period, Wright's initial complaint detailed multiple appointments with doctors and indicated that he received an array of treatments. These treatments included laboratory testing, the use of compresses, the administration of antibiotic ointments and creams, as well as medical counseling. (Id.) Moreover, Wright received a tele-medicine consult with a specialist, Dr. Schleicher, a dermatologist, who also prescribed a course of treatment for this facial condition. (Id. ¶¶ 68-82.)

Dissatisfied with the progress of this treatment, by November, 2007, Wright requested a second consult with a dermatologist. (Id. ¶¶ 110-148.) After submitting several medical complaints to defendant Mary Lou Showalter, this second dermatology consult with Dr. Schleicher was scheduled and conducted on January 11, 2008. (Id.) Wright's complaint then detailed a series of medical disagreements which he had with the defendants relating to one aspect of the proposed course of treatment directed by medical personnel for his facial dermatitis, "kenalog-10" injections that

were prescribed by Dr. Schleicher. (Id. ¶ 137.) With respect to this aspect of his treatment, Wright alleged that defendant Allison Brown did not immediately implement this program of treatment in January of 2008, but only commenced this treatment in March, 2008. (Id. ¶¶ 147-180.) While Wright advanced this claim regarding Brown's alleged delay in commencing this treatment, he also seemed to acknowledge that during the same time period he initially refused to allow Brown to administer these injections, due to his need to do "research" on this proposed course of treatment. (Id. ¶163.) In fact, it appears that Wright ultimately refused the treatment offered to him by prison medical staff. (Doc. 19, Showalter Declaration, ¶16).

Having experienced these medical problems beginning in 2002, Wright first filed suit in the Court of Common Pleas in January, 2010, eight years after the events described in his complaint first took place. (Docs. 1 and 2.) On April 13, 2010, the defendants removed this civil rights action to federal court. (Doc. 2.) The defendants then filed, and briefed, two motions to dismiss various claims lodged by Wright in his complaint. (Docs. 4, 5, 6, and 9.) Presented with these potentially dispositive motions, we set a briefing schedule in this case, a schedule which called upon Wright to respond to these motions to dismiss by May 18, 2010. (Doc. 8.)

Wright never complied with this Court order, or responded to these motions. While Wright ignored the litigation deadlines set by the Court, we nonetheless conducted a merits analysis of his complaint, an analysis which concluded with the

issuance of a report and recommendation on May 27, 2010, which recommended that the defendants' Motions to Dismiss (Docs.4 and 6) be granted in part, in that all claims which pre-dated January 11, 2008 as to all defendants should be dismissed, and all claims as to defendants Department of Corrections, Clinton Myers, Bureau of Health Care Services, Linda Farell, Louis Araneda, and Dr. Klemick should be dismissed. We further recommended that the motions to dismiss be denied as to defendants Schleicher, Showalter and Brown, but only with respect to claims which post-dated January 11, 2008. (Doc. 10.)

This May 27, 2010, report and recommendation went on to alert Wright to the consequences of failing to litigate his claims or comply with court orders, noting for Wright that he had defaulted on an important procedural deadline in this case by failing to respond to this motion to dismiss, despite being ordered to do so by the Court. As we advised Wright, this procedural default frustrated and impeded efforts to resolve this matter in a timely and fair fashion, and under the rules of this Court also could lead to dismissal of the action, since Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond, and provides that:

> Any party opposing any motion shall file a responsive brief, together with any opposing affidavits, deposition transcripts or other documents, within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. <u>Any respondent who fails to comply with this rule shall be deemed not to oppose such motion</u>.

Local Rule 7.6 (emphasis added).

While this procedural default could have also justified dismissal of this action in its entirety, on May 27, we recommended that Wright be given another, final opportunity to further litigate this matter. (Doc. 10.) Wright never responded to this report and recommendation in any fashion. Accordingly, on June 15, 2010, the district court adopted this report and recommendation and remanded this case to this Court for further proceedings.

Defendants' Brown and Showalter have now filed motions for summary judgement relating to the medical treatment inmate Wright received in early 2008, the sole remaining claim in this case. (Docs. 14 and 18.) These motions have been fully briefed by the defendants, (Docs. 15, 16, 17, and 21), in accordance with the November 1, 2010, order of this Court. (Doc. 20.)

That November 1, 2010, order also defined obligations for Wright, as the plaintiff. In clear and precise terms, the order instructed Wright that: "[t]he plaintiff shall file a response to the motion[s] in accordance with Local Rule 7.6 on or before **November 23, 2010."** (Doc. 20.) Despite this clear instruction, and our prior admonition that a failure to comply with briefing orders could result in the dismissal of his case, Wright has not responded in any fashion to either of these defense

motions. In the absence of any response from Wright we will, therefore, treat the motions as ripe, and recommend that this complaint be dismissed in its entirety.

**III.   Discussion**

**A.   Under The Rules of This Court These Motions for Summary Judgment Should Be Deemed Unopposed and Granted**

At the outset, under the Local Rules of this Court the plaintiff should be deemed to concur in this motion, since Wright has failed to timely oppose the motion, or otherwise litigate this case, despite being instructed to reply to the motion. Indeed, as we have noted, the plaintiff has defaulted on a series of important procedural deadlines in this case by failing to: (1) timely respond to the initial motions to dismiss in this case; (2) failing to respond to the summary judgement motions filed in this case; and (3)by failing to comply with numerous court orders directing Wright to file briefs and respond to pending motions.

These repeated and persistent procedural defaults completely frustrate and impede efforts to resolve this matter as to the remaining defendants in a timely and fair fashion, and under the rules of this Court warrant dismissal of the action, since Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions and provides that:

> Any party opposing any motion shall file a responsive brief, together with any opposing affidavits, deposition transcripts or

other documents, within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. <u>Any respondent who fails to comply with this rule shall be deemed not to oppose such motion</u>.

Local Rule 7.6 (emphasis added).

The necessity of compliance with court orders and the local rules is a familiar principle for Wright and one which we underscored for Wright in our May 27, 2010, report and recommendation when we specifically alerted Wright to the provisions of Local Rule 7.6, but provided him with one final opportunity to comply with the rule. Despite this explicit warning Wright has not complied with the rule, or this Court's order, by filing a timely response to these motions. Therefore, Wright's latest procedural default compels the Court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. *See* Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion ...." <u>McCurdy v. American Bd. of Plastic Surgery</u>, 157 F.3d 191, 197 (3d Cir.1998)

<u>Lease v. Fishel</u>, 712 F.Supp.2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we recognize a fundamental guiding tenet of our legal system. A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would

actually violate the dual mandate which guides this Court and motivates our system

of justice: 'that courts should strive to resolve cases on their merits whenever possible

[but that] justice also requires that the merits of a particular dispute be placed before

the court in a timely fashion'."Id. Therefore, we are obliged to ensure that one party's

refusal to comply with the rules does not lead to an unjustified prejudice to those

parties who follow the rules.

These basic tenets of fairness apply here. In this case, the plaintiff has plainly

failed to comply with Local Rule 7.6 by filing a timely response to the summary

judgment motions filed by defendants Brown and Showalter. This wholly unexplained

and unexcused failure to respond now compels us to apply the sanction called for

under Rule 7.6 and deem the plaintiff to not oppose these motions.

## B.   Dismissal of this Case Is Also Warranted Under Rule 41

Beyond the requirements imposed by the local rules of this Court, Rule 41(b)

of the Federal Rules of Civil Procedure also authorizes a court to dismiss a civil action

for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply

with these rules or a court order, a defendant may move to dismiss the action or any

claim against it." Fed. R. Civ. P. 41(b). Decisions regarding dismissal of actions for

failure to prosecute rest in the sound discretion of the court, and will not be disturbed

absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d

Cir. 2002)(citations omitted). That discretion, however, while broad is governed by certain factors, commonly referred to as <u>Poulis</u> factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. <u>Poulis v. State Farm Fire and Cas. Co.</u>, 747 F.2d 863, 868 (3d Cir.1984).

<u>Emerson</u>, 296 F.3d at 190. Recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. <u>See, e.g.,</u> <u>Emerson v. Thiel College, supra</u>; <u>Tillio v. Mendelsohn</u>, 256 F. App'x 509 (3d Cir. 2007); <u>Reshard v. Lankenau Hospital</u>, 256 F. App'x 506 (3d Cir. 2007); <u>Azubuko v. Bell National Organization</u>, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the <u>Poulis</u> factors weighs heavily in favor of dismissing this action in its entirety. At the outset, a consideration of the first <u>Poulis</u> factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the Plaintiff, who has persistently failed to file

pleadings, or respond to court orders directing him to fulfill his litigation responsibilities.

Similarly, the second Poulis factor–the prejudice to the adversary caused by the failure to abode by court orders–also calls for dismissal of this action. The plaintiff's repeated failures to address fundamental issues in this litigation has resulted in protracted delays in this case. These repeated, unjustified, and unexplained delays have wholly frustrated the defendants in defense preparations in this case, and have unreasonably delayed the resolution of this action. In such instances dismissal of the case clearly rests in the discretion of the trial judge. Indeed, such dismissal orders are frequently issued when a court is confronted by a litigant who persistently refuses to timely file and serve pleadings. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007)(failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007)(failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007)(failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate. The plaintiff has repeatedly failed to timely serve pleadings, respond to motions, and comply with orders of the Court throughout these proceedings. This persistent pattern

of non-compliance is unexcused, and unexplained. This failure to abide by the minimal requisites for litigation–timely submission and service of pleadings–is delaying this case, and prejudicing the parties. This non-compliance simply cannot be condoned, and must be curtailed.

The fourth <u>Poulis</u> factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff. At this juncture, when the plaintiff has failed to respond to motions or comply with multiple instructions of the Court directing the plaintiff to take specific actions in this case, the Court is compelled to conclude that the Plaintiff's actions are not accidental or inadvertent but instead reflect a careless, reckless or intentional disregard for this case and the Court's instructions.

While <u>Poulis</u> also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing <u>Poulis</u> agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. <u>See, e.g.,</u> <u>Briscoe v. Klaus</u>, 538 F.3d 252, 262-63 (3d Cir. 2008); <u>Emerson</u>, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the Court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering numerous orders

counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The plaintiff still declines to obey court orders, refuses to comply with the court-imposed timetables, and otherwise blatantly ignores his responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, and only the sanction of dismissal remains available to the Court.

Finally, under <u>Poulis</u> we must consider one other factor, the merits of the parties' claims. In our view, consideration of this factor also strongly underscores that this action should be dismissed, since as a legal matter the plaintiff has failed to state a valid Eighth Amendment claims against any of the remaining defendants. Our merits analysis of these currently uncontested, summary judgement motions is set forth below.

### C.    **The Remaining Defendants Are Entitled To Summary Judgment on Wright's Eighth Amendment Claims**

#### 1.    **Rule 56– The Legal Standard.**

Defendants Brown and Showalter have moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(c). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the

nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

> **2.** **Legal Standards Governing Eighth Amendment "Deliberate Indifference" Claims in a Prison Medical Context.**

Liberally construed, the gravamen of Wright's complaint is that prison officials violated his rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to his medical needs. Wright faces an exacting burden in advancing this Eighth Amendment claim against prison officials in their individual capacities. To sustain such a claim, Wright must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.) In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' Farmer v. Brennan, 511 U.S. 825, 841 (1994). A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' Id. at 837." Garvey v. Martinez, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, Wright is required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison

officials that indicate deliberate indifference to that need. <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." <u>Estelle</u>, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. <u>Estelle</u>, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." <u>Durmer</u>, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. <u>Clark v. Doe</u>, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an

inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. <u>See e.g.</u> <u>Brown v. Borough of Chambersburg</u>, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". <u>Gindraw v. Dendler</u>, 967 F.Supp. 833, 836 (E.D. Pa. 1997). Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; <u>see, e.g.</u>, <u>Ham v. Greer</u>, 269 F. App'x 149 (3d Cir. 2008); <u>James v. Dep't of Corrections</u>, 230 F. App'x 195 (3d. Cir. 2007); <u>Gillespie v. Hogan</u>, 182 F. App'x 103 (3d Cir. 2006); <u>Bronson v. White</u>, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); <u>Gindraw v. Dendler</u>, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104

(1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F.App'x. at 197-198 (citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)). Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See Taylor v. Norris, 36 Fed. Appx. 228, 229 (8th Cir. 2002); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-35 (7th Cir.1996); Sherrer v. Stephen, 50 F.3d 496, 497 (8th Cir.1994). Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983; see e.g., Gause v. Diguglielmo, 339 F.App'x 132

(3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F.App'x 454 (3d Cir. 2009)(same); Rozzelle v. Rossi, 307 F.App'x 640 (3d Cir. 2008)(same); Whooten v. Bussanich, 248 F.App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F.App'x 390 (3d Cir. 2007)(same), since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted).

There is a necessary corollary to this principle, limiting the reach of the Eighth Amendment in a prison medical setting. In a case such as this, where the plaintiff's complaint reflects that an inmate received some level of on-going medical care, it is also well-established that prison supervisors may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d. Cir. 1993). The rationale for this rule has been aptly explained by the United States Court of Appeals for the Third Circuit in the following terms:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a

case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive *not* to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference

Spruill v. Gillis, 372 F.3d 218, 236 (3d. Cir. 2004).

Applying this standard, courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, supervisory staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims.  See, e.g., Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006); Spruill v. Gillis, supra; Durmer v. O'Connor, supra; Garvey v. Martinez, No. 08-2217, 2010 WL 569852 (M.D. Pa. Feb. 11, 2010); Hodge v. United States. No. 06-1622, 2007 WL 2571938 (M.D. Pa. Aug. 31, 2007). This rule applies specifically to those prison staff whose involvement in a medical matter consists solely of examining, reviewing and addressing an inmate grievance concerning medical issues. Where supervisory staff simply review a grievance, and refer an inmate to medical personnel, it is clear that "merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim." Garvey v. Martinez,  2010 WL

569852,*7 (M.D.Pa. Feb. 11, 2010)(citations omitted); <u>see</u> <u>Johnson v. Doughty</u>, 433 F.3d 1001 (7th Cir. 2006).

Moreover, a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison supervisor when the incidents set forth in the complaint occurred. Quite the contrary, to state a claim under §1983, the plaintiff must show that the supervisory defendants, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. §1983; <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902 (3d Cir. 1997); <u>see also Maine v.Thiboutot</u>, 448 U.S. 1 (1980). Liability under § 1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988).

<u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005).

### 3. Defendants Brown and Showalter Are Entitled To Summary Judgment on Wright's Claims

Judged against these standards, defendants Brown and Showalter are entitled to summary judgment on the remaining claims set forth by Wright in his complaint. With respect to these defendants, Wright's complaint relates solely to an alleged six-week delay in the scheduling of prescribed skin treatments for this prisoner in early 2008, a claim that Wright advances even though he ultimately refused to undergo this treatment once it was scheduled for him.

### (a.) Undisputed Facts-Defendant Brown

As to defendant Brown the undisputed facts on this narrow issue are as follows: On January 11, 2008, an outside dermatological specialist examined Wright and ordered intralesional Kenalog 10 injections. (Doc. 17 Ex. 3, Consultation Record) On January 25, 2008, medical staff directed that should Wright receive a series of three intralesional injections to be given every Wednesday.(Doc. 17, Ex. 2, Physician's Orders).

On January 30, 2008, Wright went to the medication line for an injection of Kenalog into his keloid lesion. (Doc. 17, Ex. 1, Progress Note; Ex. 7, Declaration).At that time, however, the only available Kenalog was not the precise form of this drug that had been recommended by the physician. (Doc. 17, Ex. 1, Progress Note; Ex. 7, Declaration). Defendant Brown informed Wright of this fact in the exam room and

documented that she would order the appropriate form of Kenalog, but also noted that Wright was reluctant to accept this medication, stating that he "wanted to look this up" before agreeing to undergo treatment. (Doc. 17, Ex. 1, Progress Note; Ex. 7, Declaration).

One week later, on February 6, 2008, Wright was seen by Physician Assistant Auman, (Doc. 17, Ex. 1, Progress Note), who asked Wright whether he had researched his medical issues regarding this treatment. (Doc. 17, Ex. 1, Progress Note.) Wright continued to harbor concerns about this treatment, asking who would be giving him these injections. In response to this question, Physician Assistant Auman advised Wright that the medical staff assigned duty on the medication line when he was scheduled for treatment would administer the injections. (Doc. 17, Ex. 1, Progress Note.) Wright then declined this treatment, stating that he did not trust everyone and that he had not yet had the time to complete his research regarding the injections. (Doc. 17, Ex. 1, Progress Note.) Confronted by Wright's refusal to accept treatment, Auman then instructed Wright to advise medical staff through sick call when he decided to move forward with the injections. (Doc. 17, Ex. 1, Progress Note.)

Two weeks later, on February 26, 2008, Wright was seen on sick call by Defendant Brown. (Doc. 17, Ex. 1, Progress Note; Ex. 7, Declaration.) On this occasion, Wright indicated that he now wanted to move forward with the injections. (Doc. 17, Ex. 1, Progress Note.) Accordingly, this treatment was scheduled and on

March 7, 2008, Wright appeared on the sick call line, but the specific form of Kenalog needed for this treatment was not available for him. (Doc. 17, Ex. 1, Progress Note; Ex. 7, Declaration.) Defendant Brown, therefore, indicated to Wright that the medicine would be re-ordered and it was, in fact, ordered for stock the same day. (Doc. 17, Ex. 1, Progress Note; Ex. 2, Physician's Orders; Ex. 7, Declaration.) One week later, on March 14,2008, Wright appeared again before Physician Assistant Auman for the injection.(Doc. 17, Ex. 1, Progress Note). However, when he found out Auman would be administering the injection, Wright walked out of the examination without receiving this treatment. (Doc. 17, Ex. 1, Progress Note.) In fact, Wright never consented to undergo this treatment regime, refused the Kenalog injections recommended by the dermatologist, and has not been seen by medical staff for this issue since July, 2008. (Doc. 19, Showalter Declaration, ¶16.)

### (b.) Undisputed Facts–Defendant Showalter

As for Defendant Showalter, the undisputed facts show that Showalter is currently employed by the Pennsylvania Department of Corrections (DOC) as a corrections health care administrator (CHCA) at SCI-Huntingdon. (Doc. 19, Ex. A – Declaration of Mary Lou Showalter, ¶1.) Showalter's responsibilities included monitoring the running of the medical department at SCI-Huntingdon, scheduling inmate care, and responding to inmate grievances. (Doc. 19, Showalter Declaration, ¶2).

Late in 2007, Wright was seen by Dr. Klemick who recommended that the inmate see a dermatologist concerning his ingrown hair problem. On December 18, 2007, Wright sent a Request to Staff asking when he would see a dermatologist and on December 19, 2007, Showalter responded that the institution was waiting for a dermatologist to schedule his appointment. (Doc. 19, Showalter Declaration, ¶5; Ex.C - 12/18/07 Request to Staff.) On January 10, 2008, Wright again asked when he would see a dermatologist for his facial problem and Showalter responded on January 11, 2008, that he was "scheduled to be seen today." (Doc. 19, Showalter Declaration, ¶6; Ex.D - 1/10/08 Request to Staff.) Wright was then seen by a dermatologist, Dr. Schleicher, on January 11, 2008, and the dermatologist recommended treating Wright's ingrown hairs with injections. (Doc. 19, Showalter Declaration, ¶7; Ex. F - Note of Dermatology consult.)

Ten days later, on January 21, 2008, Wright sent another Request to Staff asking whether surgical removal of his ingrown hairs had been approved. On January 24, 2008, Showalter replied to Wright, explaining that the dermatologist recommended injections and that surgery had not been ordered for him. (Doc. 19, Showalter Declaration, ¶8; Ex. F - 1/21/08 Request to Staff.) Dissatisfied, on January 24, 2008,Wright submitted yet another Request to Staff questioning why he had not received the injections and again if surgery was a possibility. Showalter responded to this inquiry, telling Wright that the dermatologist has several days to dictate his

treatment orders, that treatment would not occur until the orders were received, that surgery was not ordered and that he would be treated through injections instead. (Doc. 19, Showalter Declaration, ¶9; Ex. G - 1/24/08 Inmate to Staff.)

Beginning on February 1, 2008, and continuing through the summer of 2008, Wright filed a series of grievances complaining about delays in his scheduled consult with a dermatologist; delays in his treatment; the refusal of prison officials to authorize surgery; the refusal of prison officials to provide him with an electric razor; and a host of other medical matters. (Doc., 19, Exs. H-T.) As a corrections health care administrator (CHCA) at SCI-Huntingdon, Showalter responded to a number of these grievances, explaining why the various requested treatment options sought by Wright were not available. However, while Showalter provided these explanations to Wright, she did not set any of these treatment policies, or make any of the medical judgments which were the subjects of Wright's various complaints. (Id.)

Finally, the summary judgment motions reveal a final irony. It is undisputed that Wright has now refused the treatment which he claims in his complaint was delayed by the defendants. Thus, Wright has to date refused the Kenalog injection that was recommended by the dermatologist, and he has not been seen by medical staff for this issue since July, 2008. (Doc. 19, Showalter Declaration, ¶16.) Accordingly, Wright's complaint is premised on an extraordinary assertion: that prison staff violated his rights when they delayed in providing Wright treatment which he refuses to accept.

### 4. **Wright's Grievances Do Not State A Viable Claim**.

Given these undisputed facts, we find that none of the remaining grievances set forth in Wright's complaint state a viable Eighth Amendment claim against either defendant Showalter, or defendant Brown.

In essence, Wright's complaints are nothing more than a dispute between an inmate and prison medical staff relating to the timing of skin treatments, treatments which Wright ultimately refused to undergo. As a legal matter disputes between inmates and medical professionals concerning which of several available treatments to use in addressing a medical condition simply do not rise to the level of a constitutional infraction involving deliberate indifference to a serious medical need. Indeed, courts have repeatedly held that when an inmate's Eighth Amendment claim entails nothing more than a disagreement concerning which type of treatment to prescribe for a particular ailment, prison officials are entitled to a judgment in their favor as a matter of law. See e.g., Gause v. Diguglielmo, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F.App'x 454 (3d Cir. 2009)(same); Whooten v. Bussanich, 248 F.App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F.App'x 390 (3d Cir. 2007)(same).

In fact, in the specific context of prison medical treatment for skin conditions, the United States Court of Appeals for the Third Circuit has held that a dispute

between an inmate and prison physicians regarding competing medication and treatment options to address the cosmetic effects of a skin condition as a matter of law does not amount to deliberate indifference to an inmate's medical needs. Rozzelle v. Rossi, 307 F.App'x 640 (3d Cir. 2008). Rozzelle is particularly instructive here, since as a legal matter Rozzelle rejects the theory advanced by Wright that a dispute between an inmate and health care providers regarding the specific choice of drugs to treat the aesthetic effects of a skin condition amounts to cruel and unusual punishment in violation of the Eighth Amendment.

Moreover, with respect to defendants Showalter and Brown, their efforts in January and February of 2008 to schedule this treatment for Wright–treatment which Wright ultimately refused–cannot form the basis of a claim of deliberate indifference to this inmate's medical needs. Indeed, in the face of Wright's refusal to accept any form of treatment, it is difficult to see how any brief delay in providing some treatment which is now refused can rise to the level of a constitutional infraction.

Finally, Showalter cannot be held liable to Wright based upon her role responding to Wright's inmate grievances. It is well-settled that inmates do not have a constitutional right to a prison grievance system. See Speight v. Sims, No. 08-2038, 283 Fed. Appx. 880, 2008 WL 2600723 at *1 (3d. Cir. June 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction

with response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern.").

This principle applies with particular force to medical complaints like those raised by Wright in his grievances. In a case such as this, where the grieving inmate's complaints reflect that the prisoner is receiving some level of on-going medical care, non-medical correctional staff will not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d. Cir. 1993), since:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive *not* to delegate treatment

> responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference

Spruill v. Gillis, 372 F.3d 218, 236 (3d. Cir. 2004).

Applying this standard, courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims. See, e.g., Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006); Spruill v. Gillis, supra; Durmer v. O'Connor, supra; Garvey v. Martinez, No. 08-2217, 2010 WL 569852 (M.D. Pa. Feb. 11, 2010); Hodge v. United States. No. 06-1622, 2007 WL 2571938 (M.D. Pa. Aug. 31, 2007); Flanyak v. Hopta, 410 F.Supp.2d 394 (M.D. Pa. 2006). Furthermore, when non-medical corrections staff simply review a grievance, and refer an inmate to medical personnel, it is clear that "merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim." Garvey v. Martinez, 2010 WL 569852, at *7 (M.D.Pa. Feb 11,2010)(citations omitted); see Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006)

In sum we find that Wright has abandoned this litigation by continually refusing to defend his lawsuit. This fact alone justifies dismissal of this action. However, we also find that the remaining claims in this case–which relate to a brief delay in offering an inmate a form of treatment that he refuses to accept– are meritless. Therefore, this case should be dismissed on its merits.[1]

---

[1]Finally, we note that Wright has apparently neglected to serve the one remaining defendant named in his complaint, Dr. Schleicher. Our reasoning regarding the lack of merit of these claims, and Wright's failure to prosecute his claims, would apply with equal force to Dr. Schleicher, who is not yet served in this case, and is not yet represented by counsel. In addition, dismissal of this defendant is warranted here, because the failure to properly serve defendant Schleicher now compels this outcome under the Federal Rules of Civil Procedure. In particular, this result is mandated by two rules of civil procedure. At the outset, Rule 4 of the Federal Rules of Civil Procedure prescribes the method by which service can be made, and describes how a party must demonstrate proof of service on the record. See Fed.R. Civ. P. Rule 4(a)-(l). Rule 4 also sets time limits for service, and prescribes the sanction of dismissal for the failure to make proper and timely service, stating as follows:

> **(m) Time Limit for Service.** If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action . . . against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

F. R.Civ. P., Rule 4(m).

The language of Rule 4(m) is both clear and mandatory. Where there is an unjustified and unexcused failure to timely serve a complaint the court "must dismiss the action."

### III.  **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motions for summary judgment (Docs.14 and 18) be GRANTED, and IT IS FURTHER RECOMMENDED that this case should be dismissed as to all defendants and closed.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions

Submitted this 2d day of December, 2010.

_**S/Martin C. Carlson**_
Martin C. Carlson
United States Magistrate Judge